```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X    MEMORANDUM IN
JAMES RUTIGLIANO                                               OPPOSITION TO
                                                               MOTION TO
                                                               DISMISS
         Plaintiff,
                                                               07cv 4614 (JSR)
CITY OF NEW YORK, MARIA VELEZ
& JOHN & JANE DOES ## 1-4,

         Defendants.

----------------------------------------------------------X
```

## PRELIMINARY STATEMENT

Defendant City of New York pays lip service to the proper standards applicable to a motion to dismiss on the pleadings, then goes right ahead to assume the falsity of the allegations set forth in the complaint; to construe the allegations in favor of the defendants; and even have the nerve to demand "evidence" before the commencement of discovery. A man with no criminal record, who had never even been arrested, was held in custody for legal possession of a non-controlled drug that he needed for his mental health. Defendant cites 62 cases for the proposition that a law abiding citizen can not only be stopped, searched, and held in custody on an imaginary crime, but humiliated in open court, his medical condition revealed whoever happens to be in the audience, then his medication taken away from him. All of this happened, moreover, because the City leaves it up to the officer's whim to decide if something in the form of a pill is or is not a controlled substance: Lexapro, an over-the-counter herbal remedy, Kaopectate tablets – the City's position is that it is okay hold a law abiding citizen against his will in a God-awful holding cell and let the judge handle it after the fact. But this is not how the Constitution works. For multiple reasons, Mr. Rutigliano's constitutional rights were violated and the case should not be dismissed.

**FACTS**

The facts that must be accepted as true are set forth in the Second Amended complaint, which was filed and served on September 24, 2007.[1] Thus the facts are as follows:

On 3/15/07 at approximately 7 PM at 14th Street Between First Avenue and Avenue A in Manhattan, plaintiff, a law abiding citizen who had theretofore never even been arrested, was obeying all laws, at which time an emotionally disturbed woman began to attack him after plaintiff accidentally stepped on her foot. Second Amended Complaint ¶ 7.   In response to a 911 complaint of an assault, in which plaintiff was victim and attempting to defend himself, approximately six police officers arrived: four undercovers and two uniformed, only one of whose names or badge numbers, the named defendant, are known to plaintiff. ¶ 8. Both the aggressor (an unidentified woman) and the victim (plaintiff) of the assault declined to press charges, and the police officers made an informed decision not to arrest plaintiff; one of them even said, "She's not pressing charges," or words to that effect. Nevertheless, despite an affirmative decision not to arrest, one of the officers searched plaintiff's shoulder bag illegally and without claimant's consent. At the time of the search, no arrest was intended. ¶ 9

In searching plaintiff, the officer found 16 sample boxes of a prescription medication called Lexapro that had been given to claimant earlier in the evening by Dr. William Weiss. Lexapro is a legal drug that is not a controlled substance. Lexapro is commonly prescribed for depression and is even advertised on TV. ¶¶ 10-12. The medication that plaintiff had in his possession was contained in seven tablet sample boxes, which did <u>not</u> indicate that it is a

---

[1] The scheduling order gave plaintiff leave to amend on or before this date and plaintiff has taken advantage of this, asserting two new causes of action, one against the City, and pleading a post-arraignment deprivation of liberty. Filing of complaints is done by hand, followed by ecf filing, therefore the amended complaint will not show up on the docket before this motion. Additionally, Officer Velez was served on September 24, 2007.

controlled substance; furthermore, it even indicated its chemical composition with a website to visit for more information. ¶ 13.  Plaintiff had been on this medication for two years. Dr. Weiss had given the samples to claimant – a two month supply – because claimant does not have insurance and the samples are given to Dr. Weiss free by the pharmaceutical company. ¶ 15.

Officer Velez arrested plaintiff after the police officers debating amongst themselves who should make the arrest.  When plaintiff was aware that he was being arrested for possession of a controlled substance, he offered to provide the officers with the name and number of the claimant's doctor, but his entreaties that he was entitled to carry the medication were entirely ignored. ¶ 16.

One of the officers stated that he did not have time to make such a call, but he later said that he had called a pharmacy to ascertain whether claimant had the right to carry the medication. This was in fact a lie; defendants did nothing to ascertain whether plaintiff had the right to carry this medication, or whether it was a controlled substance. ¶¶ 17-18.

Defendants had no probable cause to arrest plaintiff for an assault. Upon information and belief, a complaining witness had called 911 to complain of an assault, which merely gave the defendants the right to stop and inquire. At the time of the inquiry, however, upon information and belief, there was no evidence that would have furnished a basis for probable cause to arrest plaintiff. The putative victim – who was actually a mentally disturbed aggressor – declined to give a statement to the police, and no other information other than the 911 call was enough to effectuate an arrest. Even assuming arguendo there was probable cause to arrest plaintiff based on the 911 call, by the time plaintiff was arrested and taken to the precinct for booking, there was no evidence, credible or otherwise, that would have allowed the police to sign a sworn statement under penalty of perjury that a crime had been committed. ¶ 19-20. Nevertheless, at 22:25 hours

on the date of the arrest, one PO Maria Velez, Shield Number 11811, signed a statement under penalty of perjury that plaintiff had been in possession of a controlled substance. In fact, this statement was perjurious and there was no evidence whatsoever that plaintiff was in possession of a controlled substance. In fact, the only thing that Velez knew was that plaintiff was in possession of sixteen boxes of a commercial medication, which is completely consistent with innocence and not a basis to charge someone with a crime that could extend his detention and potentially subject him to a year in jail. ¶ 21.

Officer Velez was able to get away with this lie with impunity or at a minimum plausible deniability as to her culpability because the City of New York fails to give its police officers objective standards by which to ascertain as a matter of fact whether a drug seized during a search is or is not a controlled substance. In fact, the slightest bit of fact checking – reference to the list of controlled substances by statute, the PDR, or even a simple internet search – would have revealed to Officer Velez that Lexapro is not a controlled substance.[2] ¶ 22.

As a result of the signing and filing of the instrument attached as Exhibit B, plaintiff was held in detention for an additional twelve hours. He was arraigned on the crime, under CPL 220.03, of possession of a controlled substance. Under statute (CPL 170.10) and local custom, an arraignment consists solely of a brief statute of the charges and rights, which can be waived by

---

[2] In fact, in at least one other case brought by the undersigned attorney, the exact same thing happened. In <u>Krauss v City of New York</u> et ano,, 00 Civ. 3656 (LAK), the plaintiff suffered an adverse reaction to a legal, herbal remedy and was taken to the hospital. Because the City allows police officers their own arbitrary decision as to what constitutes a controlled substance, however, he was arrested at St. Vincent's (a block away from the health food store where the herbal remedy had been purchased) and chained to his hospital bed until he recovered from the adverse reaction, at which time he was taken to court, arraigned and the charges dismissed.

counsel. There is no plea entered in criminal court. In this case, a court officer briefly stated the charge, and plaintiff's counsel entered an appearance and waived a reading of the rights and charges. The arraignment was complete, at which point, plaintiff was required to remain during a period of colloquy at which time his counsel represented to the judge that Lexapro is not a controlled substance and named plaintiff's doctor for which it had been prescribed for depression. This was humiliating to plaintiff, as he wanted his psychiatric condition to remain confidential, nevertheless his freedom was something he cherished more and thus had no choice but to be exposed. Further discussion ensued, for a period of up to two minutes after the arraignment, during which plaintiff was not free to go. After approximately ninety seconds to two minutes of colloquy, upon the DA's motion, the case was dismissed and plaintiff was free to go. ¶ 23.

After plaintiff was released from custody, he went to collect his belongings, but the Lexapro which he needed for his depression was not returned to him, though other items in his possession were. The police refused to return the Lexapro because of Maria Velez's false decision to abuse her authority and unilaterally deem a commonly prescribed anti-depressant a controlled substance. As a result of this seizure, this taking, plaintiff was not able to maintain his medication regimen for a period of time, and it slightly worsened his depression. What is most important, he is enraged that in a free society he could be arrested and detained because a vindictive police officer went through his bags without permission or authority and her perjurious affidavit said something that was objectively and totally false.

Plaintiff now brings several causes of action under 42 U.S.C. ¶ 1983, the New York State Constitution and the common law of the State of New York for false arrest, malicious prosecution, false imprisonment, illegal search and illegal taking of his property.

5

**ARGUMENT**

The City predicates its dismissal motion on the alleged non-existence of any viable federal cause of action. Some of the City's chip shots against the complaint are better than others, yet in order to win at this stage, it must aim for heart and kill. Instead, it has perhaps inflicted some non-life-threatening wounds on plaintiff, and given him a chance to recover by repleading. For the following reasons, this motion was a waste of attorney and court time and should be denied in its entirety.

I.     Plaintiff Asserts § 1983 Cause of Action Against the City.

Plaintiff has now asserted a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), giving plaintiff an independent basis to remain in federal court, in addition to the non-federal causes of action that the City has not moved to dismiss. Plaintiff alleges that the City has failed to train and properly supervise its officers as to how to determine whether something is or is not a controlled substance. Under State and Federal law, only certain drugs, some of which are legal and some of which are illegal, are considered controlled substances. See N.Y. Penal Law § 220.00(5) and Public Health Law § 3306. While there are numerous chemical compounds that are considered controlled substances, there are a finite number of compounds that are within that group; these are but a small subset of the hundreds of thousands – millions? – of legally prescribed or over-the-counter chemical compounds for sale in this country. In plaintiff's case, he had in his possession a box of a medication that not only listed its precise chemical compound – escitalopram oxalate, which is not on any list forbidden by any jurisdiction in the country – but also contains a website to consult for additional information. In plaintiff's case, he even supplied the arresting officer with the number of his psychiatrist, and she refused to contact him. Clearly, if this officer felt no compunction in signing a complaint under

6

penalty of perjury that Lexapro is a controlled substance, then there are no standards whatsoever guiding a police officer's decision whether to charge a citizen with this crime.

Additionally in this attorney's experience, this is not the first time this has happened, and this plaintiff has a good faith basis to claim the City has no policy to ascertain whether a crime has been committed in this area of law; using these two examples, the standard seems to be to arrest someone in possession of a pill and let another entity decide whether to carry the matter to a different level. In a country, however, where citizens are protected by the Fourth Amendment, this is patently illegal and should be enjoined.

Therefore, in addition to seeking damages for his own case, plaintiff seeks to enjoin this from happening again, and insisting the City's officer's discretion be limited to objective standards in ascertaining whether an arrestee is in possession of a drug that is or is not proscribed by the applicable statute.

II.     Illegal Seizure of Property and/or Unconstitutional Taking.

Defendant does not address plaintiff's claim that his property was improperly not returned to him, which was asserted in the original amended complaint. By taking his Lexapro, even after the case was dismissed against him, this was an illegal seizure and/or an improper taking that is cognizable under § 1983. See Krimstock v. Kelly, 306 F.3d 40, 51-52 (2nd Cir. 2002) (even temporary taking can be unconstitutional).

III.    Illegal Search.

Defendant sub silentio concedes that plaintiff should not have been charged with possession of a controlled substance, but tries to bootstrap his arrest on the unsupported *allegation* – for which there is no concrete evidence for, only supposition of, even on this motion – of menacing, reckless endangerment or disorderly conduct. More about the

7

arrest later, but if even assuming arguendo that there might have been an arrest for one of those crimes or violations, that does not give the City the ability essentially to double bootstrap an illegal search based on a crime that was never a basis for the arrest. In this case, there would have been no arrest but for the illegal search. Plaintiff asserts that it is a sufficient constitutional violation for his bag to have been searched given the officer's affirmative decision <u>not</u> to arrest plaintiff for anything concerning the emotionally disturbed woman. Second Amended Complaint ¶ 9. In other words, at the time of the search, it was not a search incident to an arrest, since the arrest was not made <u>in advance of the search</u>; rather, it was the other way around, and the arrest was the fruit of an illegal search.

      Given the set of circumstances alleged in the complaint, that no arrest was intended at the time of the search (a fact is verified by the subsequent fact that plaintiff was never charged with even the vague and ubiquitous "disorderly conduct") then absent any independent basis for a search – such as, for example, a "fair probability that contraband or evidence of a crime will be found in a particular place," <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983) – then the illegal search claim should not be dismissed even assuming the false arrest claim were to be dismissed. Of course, if the false arrest claim is not dismissed, then the illegal search claim would not be dismissed either, since the City has made no other argument other than the arrest to justify the search.

8

    IV.    <u>Unlawful Imprisonment</u>.

Plaintiff brings an independent cause of action for Unlawful Imprisonment under § 1983.

In an action for false imprisonment, four elements must be established: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. <u>Broughton v. State of New York</u>, 37 N.Y.2d 451, 456 (1975), <u>cert</u> <u>denied</u> <u>sub</u> <u>nom</u>, <u>Schanbarger v. Kellogg</u>, 423 U.S. 929; <u>Ostrover v. City of New York</u>, 192 A.D.2d 115 (1st Dept 1993); 59 N.Y. Jur 2d, False Imprisonment, § 11. In this case, the second amended complaint fairly alleges all of these elements, none of which implicate probable cause to arrest or a post-arraignment deprivation of liberty, more about which I discuss later. I have found no Second Circuit cases on an independent false imprisonment charge, however, plaintiff contends that, assuming arguendo his arrest was based on the mysterious essence of an uncharged crime, once the arresting officer makes the determination that there is insufficient evidence to charge that crime, the officer cannot continue thereafter to hold the arrested citizen on bogus charges. It would seem self-evident: If there is no evidence to support a charge, the police officer cannot invent an alternative charge in depriving a citizen of his or her liberty. This should be true not withstanding the amount of liberty that would be restricted after his arraignment; we are talking about 12 hours of unnecessary incarceration that should be covered by some cause of action. In this case, the bogus charge that Lexapro was a controlled substance resulted in plaintiff's incarceration for an additional twelve hours. It cannot be that this is legal under the constitution.

V.      Malicious Prosecution.

It is not true, as the City suggests, that the analysis for malicious prosecution is identical under state and federal law. Cases under federal law do require the additional element of "post-arraignment deprivation of liberty," but not a single case stands for the proposition that such is required under federal law and therefore they must be examined separately.

A.      Federal Law and Post-Arraignment Deprivation of Liberty

Plaintiff adequately pleads a post-arraignment deprivation of liberty by alleging that there were ninety seconds in between his having been informed of the charges and of his release. Second Amended Complaint ¶ 24. The Second Circuit has held that the mere requirement that the plaintiff must return to court and be restricted in his travel is enough of a post-arraignment deprivation to support a cause of action for malicious prosecution. Murphy v. Lynn, 118 F.3d 938, 945 (2nd Cir. 1997). In this case, plaintiff was held against his will for ninety seconds while the judge and prosecution deliberated his fate and discussed his medical condition. Plaintiff contends this is enough *at a minimum* to secure nominal and punitive damages by the trier of fact. No one possessing a legal medication, which he has been prescribed, should under our constitution be subject to any form of deprivation of liberty, whether it is ninety seconds or ninety days. After plaintiff was informed of the charges he was effectively arraigned. After that, though undeniably modest, he was held against his will and humiliated in open court, which should qualify under ¶ 1983 as a post-arraignment deprivation of liberty.

B.      State Law, the Element of Malice and Commencement of Proceedings

In Murphy, 118 F.2d. at 847, the Second Circuit discusses the state tort of malicious prosecution and does not include within such discussion the element of post-arraignment deprivation. Therefore, while the elements of commencement of a criminal action and Malice

10

would apply to a malicious prosecution claim under § 1983, the element of post-arraignment deprivation would not apply to a state cause of action. That being said, first, clearly there was a commencement of criminal proceedings. If the arresting officer, the only "witness" to the alleged "crime" of possession of a controlled substance, did not commence the proceeding, which resulted in a court case against plaintiff, docket number being assigned, plaintiff's being held an additional 12 hours in jail, and his humiliation in open court, then who did? The only other person involved was the prosecutor. Even if he was asleep at the switch, defendant's underlying contention that the prosecutor is the only entity that can commence a criminal prosecution, renders no plaintiff capable of proving malicious prosecution given that the prosecutor is absolutely immune from his prosecutorial decisions.

In this case, plaintiff alleges that defendant Velez perjured herself on an affidavit that led to the commencement of criminal charges. This is not the mere "reporting of a crime to the police," Rohman v. NYCTA, 215 F;3d 208, 217 (2d Cir.1993), this went far beyond that. Velez certainly had the discretion to let plaintiff go after she arrested him, since she determined there was no evidence to charge him with anything involving the emotionally disturbed woman and since Lexapro is not a controlled substance. Nevertheless, she took it upon herself to report the possession of Lexapro to the prosecutor, then sign an affidavit under penalty of perjury that Lexapro was illegal. While this may not have been a manufacture of evidence, since the Lexapro certainly existed, it was the manufacture of a crime, and the active encouragement of a baseless prosecution. White v. Frank, 855 F.2d 956 (2d Cir.1988). It cannot be that signing a false affidavit, without which there would be no commencement of a criminal case, does not qualify as a "commencement."

As for malice, defendant decries a lack of "evidence," (br. at 15-16) but no evidence is required at this point, merely allegations. With respect to malice, the Second Circuit has held that where "a jury could find that probable cause for the   charges against the plaintiff was lacking . . . that finding alone would support an inference of  malice." <u>Ricciuti v. New York City Transit Auth</u>., 124 F.3d 123, 131 (2d Cir.1997). Since there is no imaginable probable cause to support the decision to charge plaintiff with possession of a controlled substance under these facts, then this issue need not be discussed any further, let alone proved with "evidence" at the stage of pleadings.

VI.     <u>False Arrest</u>.

The existence or non-existence of probable cause for arrest based on the uncharged crimes is perhaps the City's best argument, but to decide it at this stage would require the Court to find as a matter of law that what is described in plaintiff's testimony alone gave the police enough evidence to find probable cause. In fact, there can be no such finding at this point given that plaintiff testified only to the following: (1) That he was attacked by a woman and defended himself;  (2) that several third parties accused him of assaulting the woman; (3) that 911 was called; and (4) that the police officers spoke to one or more of the third parties. The gap in this evidence is that what the police were told, or what the evidence might have shown, which in turn is completely speculative. There is no evidence as to what anyone complained of when he or she called 911, and there is no evidence as to what the third parties told the officers when the officers appeared at the scene. Certainly, construing the evidence in plaintiff's favor, he did nothing wrong with respect to the unidentified woman, and, indeed, the officers' decision not to charge him with any wrongdoing concerning his interaction with the

12

woman supports that. Indeed, even the Second Circuit has held that in some cases, awareness of a justification defense can negate the element of probable cause. <u>Jocks v. Tavernier</u>, 316 F.3d 128, 135 (2nd Cir. 2003) (dicta). Since we do not know what the third parties said in the 911 call, or what they told the police, the Court cannot at this stage dismiss the false arrest claim, which is a fact intensive inquiry. <u>McClellan v. Smith</u>, 439 F.3d 137, 148 (2nd Cir. 2006). At this stage, the Court knows not only nothing about what the third parties told the police, but nothing about the reliability of the information they imparted. As such, the Court cannot dismiss the false arrest claim at this juncture absent further discovery. At this point, plaintiff alleges he was using force to defend himself against an emotionally disturbed woman, which is completely legal. N.Y. Penal Law §§ 35.05, 35.15. There is no other detailed evidence what the third parties told the police.

     The Court should remember that the City is attempting to defend the arrest of plaintiff for the concededly ridiculous charge of possession of a controlled substance on the *supposition* that there was evidence to arrest him for something else. Even if such imaginative bootstrapping would defend the City from a false arrest claim, both plaintiff and the Court are entitled to know for certain the missing variables – i.e.,, what the third parties told the police. The case cannot be dismissed at this juncture based on conjecture as to those variables, even if the conjecture were plaintiff's.

## CONCLUSION

For these reasons the motion should be denied.

Dated: New York, New York
September 24, 2007

                                          Yours, etc.,

                                          _____/s/_____
                                          GREGORY ANTOLLINO
                                          GA 5950
                                          Attorney for Plaintiff
                                          1123 Broadway, Suite 902
                                          New York, NY 10010
                                          (212) 334-7397