UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JAMES RUTIGLIANO,                   :
                                    :
                Plaintiff,          :          07 Civ. 4614 (JSR)
                                    :
             -v-                    :          MEMORANDUM ORDER
                                    :
CITY OF NEW YORK, MARIA VELEZ & JOHN:
& JANE DOES ## 1-4,                 :
                                    :
                Defendants.         :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        Defendants City of New York ("the City") and Maria Veliz[1] move

for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ.

P.[2]  For the reasons set forth below, the defendants' motion is

granted, although partly pursuant to Fed. R. Civ. P. 56.

        In his second amended complaint,[3] plaintiff James Rutigliano

alleges that on the evening of March 15, 2007, an emotionally

disturbed woman began to attack him on 14th Street after he

accidentally stepped on her foot.  Second Amended Complaint

---

        [1]Although the caption in this case spells the individual
defendant's name "Velez" it appears from the papers that the
officer's name is actually "Veliz."

        [2] Defendant Veliz had not been served at the time that the
instant motion was originally filed, and thus did not originally
join it, but, following service on her, the Court later granted
her permission to join in the motion and also granted permission
for supplemental briefing on the issue of qualified immunity, an
issue raised only by Veliz.

        [3] The first amended complaint, which added defendant Veliz,
was filed on July 16, 2007.  The City filed the instant motion,
including its memorandum of law, on September 14, 2007.  Only
after the motion and memorandum were filed did Rutigliano file
the second amended complaint.  As clarified at oral argument on
the motion, the Court treats the instant motion as directed
against the second amended complaint.  See transcript, 10/10/07.

("Complaint") ¶ 7.  "In response to a 911 complaint of an assault,"
police officers arrived on the scene.  Id. ¶ 8.  Both the woman and
Rutigliano declined to press charges.  Id. ¶ 9.  Nevertheless, an
officer searched Rutigliano's shoulder bag without consent.  Id.

In Rutigliano's shoulder bag, the officer found "16 sample
boxes of a prescription medication called Lexapro that had been given
to [Rutigliano] earlier in the evening by Dr. William Weiss" because
Rutigliano does not have health insurance.  Id. ¶¶ 10, 14.  Lexapro
is not a controlled substance.  Id. ¶ 11.  After finding the Lexapro,
Officer Veliz arrested Rutigliano for possession of a controlled
substance.  Id. ¶¶ 15-16.  Rutigliano offered to provide the name and
number of his doctor to verify his prescription for the medication,
but the officers ignored him and did nothing to ascertain whether
Lexapro was a controlled substance or whether Rutigliano had a right
to carry it.  Id. ¶¶ 16-18.

Rutigliano was taken to the precinct for booking, and around
10:30 p.m. defendant Veliz signed a statement swearing that
Rutigliano had been in possession of a controlled substance.  Id. ¶¶
20-22.  Plaintiff alleges that Veliz made this inaccurate statement
"because the City of New York fails to give its police officers
objective standards by which to ascertain as a matter of fact whether
a drug seized during a search is or is not a controlled substance."
Id. ¶ 22.

Rutigliano was detained for an additional twelve hours "[a]s
a result of the signing and filing" of the statement by Veliz.  Id. ¶
23.  Subsequently, Rutigliano was taken to court and arraigned, and
was then "required to remain during a period of colloquy" between

Rutigliano's lawyer and the judge "for a period of up to two minutes after the arraignment." Id. After the "ninety seconds to two minutes of colloquy, upon the DA's motion, the case was dismissed and [Rutigliano was] free to go." Id. When Rutigliano later went to collect his belongings, the police "refused to return the Lexapro." Id. ¶ 24.

Based on these allegations, Rutigliano currently asserts four kinds of claims: false imprisonment under state and federal law (Causes of Action 3 and 4); malicious prosecution under state and federal law (Causes of Action 5 and 7); illegal seizure of the Lexapro under federal law (Cause of Action 10); and a claim against the City under federal law for failure to supervise (Cause of Action 11[4]). In the second amended complaint, Rutigliano also originally asserted claims of false arrest under state and federal law (Causes of Action 1, 2, and 6) and illegal search under state and federal law (Causes of Action 8 and 9), but he subsequently withdrew these claims. See transcript, 11/9/07.

Under New York law, a claim of false imprisonment requires a showing that "the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged." Martinez v. City of Schenectady, 97 N.Y.2d 78, 85 (2001). However, when the false imprisonment claim stems from an arrest, "[t]he existence of probable cause serves as a legal

_____

[4] The illegal seizure cause of action and the failure to supervise cause of action are actually both labeled "Tenth" in the second amended complaint, but the latter will herein be referred to as Cause of Action 11.

3

justification for the arrest and an affirmative defense to the claim." Id. The elements of a false imprisonment claim under federal law (specifically, here, under 42 U.S.C. § 1983) are substantially the same as under New York law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

In this case, the fact that the police had probable cause to arrest Rutigliano is made clear beyond cavil, but not by the pleadings. Rather it is established by the sworn examination of Rutigliano himself at a so-called "50-H Hearing." See Examination of James Rutigliano, Exhibit A to Answer to Amended Complaint ("Rutigliano Examination"). A threshold question, therefore, is whether the Court can consider the Rutigliano Examination in connection with the instant motion. Under Rule 12(d), Fed. R. Civ. P., when "matters outside the pleadings are presented to and not excluded by the court," a district court may treat the Rule 12(c) motion "as one for summary judgment under Rule 56." Before a district court can do so, however, Rule 12(d) requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The Second Circuit has said that "[t]he essential inquiry [in a conversion] ... is whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) (quoting Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs., 850 F.2d 904, 911 (2d Cir. 1988)).

Here, Rutigliano "should reasonably have recognized" that the instant motion might be converted. First, the defendants mention such a possibility in their opening brief. See Defendant City of New York's Memorandum of Law in Support of Their Motion to Dismiss at 5. Second, the defendants made extensive reference to Rutigliano's examination in their various memoranda of law, and the Court referred to the examination during oral argument. See transcript, 10/10/07. Third, plaintiff's counsel, far from objecting to the consideration of Rutigliano's sworn statements in his memoranda or at oral argument, instead affirmatively argued that the defendants' motion should fail even considering Rutigliano's examination testimony. See Memorandum in Opposition to Motion to Dismiss at 12; transcript, 10/10/07. Moreover, plaintiff's counsel effectively conceded the existence of probable cause for the original arrest in giving his justification for dismissing certain of his claims but not others. See transcript, 11/9/07. Thus the Court finds that Rutigliano had a "reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion" and accordingly, as to the false imprisonment claims only, converts the Rule 12(c) motion into one for summary judgment under Rule 56.

From Rutigliano's sworn examination, it is clear that the police had probable cause to arrest Rutigliano on 14th Street for various offenses, including, for example, Reckless Endangerment in the Second Degree. See N.Y. Penal Law § 120.20 ("A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."). Rutigliano admitted that,

during the altercation with the woman on the street, he "pushed her," "wrestled with her," "threw her down on the ground," "held her fists," and "yelled repeatedly" at her.  Rutigliano Examination at 8:19 to 9:14.  Rutigliano further admitted that after this altercation, approximately five men "accused [him] of beating a woman, they threatened to beat [him] up, they cursed at [him], they surrounded [him], and they threatened [him] with the police, threatened to call the police."  Id. at 10:12-16.  After "two of the men had run after [him]" Rugigliano saw that "one of them was on the phone with the police."  Id. at 12:15-17.  From these admissions alone, it is patent that the police had probable cause to arrest Rutigliano at the outset for various offenses.  Despite some conclusory suggestions to the contrary in the Complaint, Rutigliano no longer disputes this, but instead offers the theory that, at some point subsequent to the arrest on 14th Street, probable cause dissipated, but the police continued to hold him.[5]  However, Rutigliano does not plead sufficient facts to survive a motion to dismiss on this theory, let alone to survive summary judgment.  As explored at oral argument, the only facts pled in support of this argument, and the only facts Rutigliano's counsel asserted he could establish if the motion went beyond the pleadings, are 1) that a police officer said, in Rutigliano's hearing, that the woman was not pressing charges against him and 2) that Rutigliano was in fact never charged with any crime involving the altercation on the street.  See

---

[5] Indeed, as noted, this is the line plaintiff's counsel drew at oral argument to distinguish between the false arrest claims that plaintiff was voluntarily dismissing and the false imprisonment claims that remained.  See transcript, 11/9/07.

transcript, 10/10/07.  Neither of these facts establishes that probable cause dissipated between Rutigliano's arrest on the street and his release at the arraignment.  Accordingly, summary judgment on the false imprisonment claims is granted to defendants.

A claim for malicious prosecution in New York requires a plaintiff to show "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."  Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).  To sustain a § 1983 malicious prosecution claim, the state law elements must be met, and there must also be a showing of a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  In determining whether a defendant has initiated a prosecution for the purposes of malicious prosecution liability, "[t]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  Id. at 217 (internal quotation marks omitted).  This standard may be met when a police officer acts as a complaining witness, see Sykes v. James, 13 F.3d 515, 520 (2d Cir. 1993), but only "where the [complaining] witness's testimony is knowingly and maliciously false."  White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988).

Rutigliano's malicious prosecution claims must be dismissed because defendant Veliz is entitled to qualified immunity on these

claims.  Further, the federal malicious prosecution claim fails in any event because Rutigliano has failed to plead any post-arraignment restraint of his liberty sufficient to implicate his Fourth Amendment rights.

Under both state and federal law, qualified immunity shields "government officials performing discretionary functions ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Defendant Veliz is entitled to qualified immunity on Rutigliano's malicious prosecution claims because the conduct Rutigliano complains of -- signing a sworn affidavit stating that she "recovered sixteen (16) boxes containing Lexapro, a controlled substance, in the defendant's back pack," see Exhibit B to Complaint -- does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  That the Lexapro was indeed recovered from the backpack is not disputed; thus the only part of Veliz's statement that might arguably give rise to malicious prosecution liability is the conclusion that Lexapro is a controlled substance.  Whether Lexapro is a controlled substance is a question here of New York and federal law, and hardly a matter of common knowledge.  Assuming, arguendo, that Veliz's actions would give rise to a malicious prosecution action, the Court finds that a reasonable police officer in Veliz's position could not have been expected to know that signing an affidavit containing both a true fact and an incorrect legal conclusion of this technical nature is not "the mere reporting of a crime" but on the contrary is "testimony [that] is knowingly and

8

maliciously false." Accordingly, Veliz is entitled to qualified immunity on the malicious prosecution claims.

Even if Veliz were not entitled to qualified immunity, the federal malicious prosecution claim fails as a matter of law, because the Court finds that the post-arraignment deprivation of liberty that Rutigliano alleges -- not more than two minutes at the arraignment proceeding while his attorney obtained the dismissal of the charges against him -- is not "sufficient ... to implicate the plaintiff's Fourth Amendment rights" as required under federal law. See Rohman, 215 F.3d at 215.

Rutigliano's tenth cause of action, designated as a claim of "illegal seizure of property and/or illegal taking" under federal law, likewise fails. This claim has as its factual basis Rutigliano's allegation that, after he was released from custody, "he went to collect his belongings, but the Lexapro which he needed for his depression was not returned to him, though other items in his possession were." Complaint ¶ 24.

The Second Circuit has held that "[w]here ... an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." Shaul v. Cherry Valley-Springfield Cent. School Dist., 363 F.3d 177, 187 (2d Cir. 2004); see also United States v. Jakobetz, 955 F.2d 786, 802 (2d Cir. 1992). If "the Constitution affords [Rutigliano] any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process," Shaul, 363 F.3d at 187, but Rutigliano's allegations fail in this regard as well. Succeeding on

9

a procedural due process claim requires a showing that the plaintiff 1) possessed a protected liberty or property interest 2) of which he was deprived without due process.  See McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001).  Although the Lexapro is clearly property within the meaning of the due process clause, Rutigliano fails to adequately plead that he was deprived of this property without due process because he does not allege where and from whom he attempted to retrieve the Lexapro and what he did to attempt to retrieve the property.  Mere conclusory allegations of a deprivation cannot support a claim for a procedural due process violation.

Finally, Rutigliano's § 1983 claim against the City for "failure to instruct, supervise, and control" its police officers also fails.  To hold a municipality liable as a person under § 1983, it is not enough for a plaintiff to show that the municipality "employed the offending official."  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).  Instead, a plaintiff must show that the "execution of a government's policy or custom ... inflicts the injury" the plaintiff alleges in order to hold a municipality liable under § 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). This theory of municipal liability, however, is premised on a finding that one or more individual officers have violated a plaintiff's constitutional rights.  Because none of Rutigliano's other claims survives, his derivative § 1983 claim against the City for failing to instruct, supervise, and control its employees necessarily fails.

Accordingly, Causes of Action 1, 2, 6, 8, and 9 are dismissed on consent; summary judgment is granted in favor of defendants on Causes of Action 3 and 4; and judgment on the pleadings in favor of

10

defendants is granted on Causes of Action 5, 7, 10, and 11.  All
these claims are dismissed with prejudice, and the plaintiff is
denied leave to further amend the complaint because, for the reasons
stated from the bench at oral argument, <u>see</u> transcript, 10/10/07, any
further amendment would be futile.

As a result, the Clerk of the Court is hereby directed to
enter final judgment dismissing the entire complaint with prejudice.
The Clerk is also directed to close documents 7 and 14 in the Court's
docket.

SO ORDERED.

_____

JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        January 2, 2008

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        January 2, 2008